IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

No. 12-1413

FILED

**January 28, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

NICHOLAS RYAN ROBEY,
Defendant Below, Petitioner

Appeal from the Circuit Court of Harrison County
Honorable James A. Matish, Judge
Criminal Action No. 10-F-122-3

AFFIRMED

Submitted: January 22, 2014
Filed: January 28, 2014

Jerry Blair, Esq.
Clarksburg, West Virginia
Attorney for Petitioner

Patrick Morrisey, Esq.
Attorney General
Benjamin F. Yancey, III.
Assistant Attorney General
Andrew D. Mendelson, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1. "'The Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011).

2. "'Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." Syl. Pt. 6, *State v. Slater*, 222 W.Va. 499, 665 S.E.2d 674 (2008).

3. "Disparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone." Syl. Pt. 2, *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984).

Per Curiam:

The petitioner, Nicholas Ryan Robey, appeals the October 16, 2012, order of the Circuit Court of Harrison County sentencing him to life in prison without the possibility of parole following his guilty plea to the offense of felony murder. The petitioner's sole assignment of error is that the circuit court erred in imposing a sentence that is disproportionate in comparison to the sentences received by his three co-defendants. Upon consideration of the briefs and arguments of the parties, the appendix record, and the applicable legal authority, and for the reasons discussed below, we find no error and, accordingly, affirm.

## I. Facts and Procedural History

On August 13, 2009, the petitioner and his co-defendants drove to the home of eighty-year-old Clarence Leeson in rural Harrison County, West Virginia, for the purpose of committing a burglary. Upon their arrival, the petitioner knocked on Mr. Leeson's front door while two of his co-defendants, Christopher Robey, the petitioner's brother, and Joshua Morgan, went to the back door.[1] When Mr. Leeson answered the door, the petitioner asked him if he could use his telephone because his car had broken down. While pretending to use the telephone inside the home, the petitioner allowed his co-defendants to enter the home

---

[1]A third co-defendant, Megan Jones (also known as Megan Titus), remained in the vehicle. According to the petitioner, Ms. Jones had previously been in Mr. Leeson's home and came up with the idea to commit the burglary.

through the back door.  While the petitioner talked with Mr. Leeson in the living room, the

co-defendants searched the home and stole various guns and pills.  According to the

petitioner,[2]

> Then, the only place they had left to search was Mr. Leeson's
> bedroom and they couldn't get to it without being seen by Mr.
> Leeson.  I asked what they wanted to do, and Chris was holding
> a bat and said "I'll just kill him."  I said I didn't want Mr.
> Leeson to die so I said "no, I'll do it.  I'll knock him out."  I
> figured that I would knock Mr. Leeson out and would get
> arrested later for robbery because he'd see my face, but figured
> that was better than murder.  So I walked into the living room
> with the baseball bat down by my side and I hit Mr. Leeson.
> After I hit him the first time, he stood up and so I hit him again
> and he fell back into his chair, but then he stood up again and so
> I hit him a third time and he fell back in his chair and didn't get
> back up. He was breathing pretty heavily, but he was alive.
> Then Josh and Chris went to Mr. Leeson's bedroom and I stood
> guard in the door, keeping an eye on Mr. Leeson with a mesh
> backpack on my back.  Josh and Chris got the guns and stuff out
> of the room and put some stuff in the backpack on my back,
> including a pistol and some shells.  Then I noticed that Mr.
> Leeson was bleeding pretty badly and we decided to leave.  So,
> I went to the front door and locked the front door and then we
> went out the back door and I turned the knob on the back door
> and pulled it closed. [3]  When we left, Mr. Leeson was still alive.
> I didn't think he'd die.[4]

(footnotes added).

---

[2]The petitioner's account of what happened in Mr. Leeson's home was given during a diagnostic interview.  He gave a similar consistent statement during his plea hearing.

[3]Co-defendant Joshua Morgan told the police that when the three men returned to the vehicle, the petitioner bragged about beating Mr. Leeson with a baseball bat.

[4]Mr. Leeson's body was not discovered until two days later when, at the request of his daughter-in-law, law enforcement was dispatched to his home to check on him.

The petitioner ultimately fled to North Carolina, where, upon his arrest on February 2, 2010, he told officers, "You might as well just kill me for what I have done."[5] The petitioner and his co-defendants were ultimately indicted for the offenses of felony murder, conspiracy to commit burglary, and grand larceny.

On August 5, 2010, the petitioner entered into a plea agreement with the State in which he agreed to plead guilty to felony murder as set forth in Count Ten of the indictment, and, upon acceptance thereof, the State agreed to dismiss the remaining counts. The plea agreement further provided that the State would join with the petitioner "in requesting that the Court make a recommendation of mercy[;]" that the State had made no representations to the petitioner as to the final disposition of this matter; and that "[t]he acceptance or rejection of this Plea Agreement and the matter of sentencing is left in the sole discretion of the sentencing Judge." At the conclusion of the plea hearing[6] and in a subsequent order entered August 19, 2010, the circuit court ordered a presentence investigation report and a sixty-day diagnostic evaluation and held its acceptance of the petitioner's guilty plea in abeyance pending receipt of those reports.

---

[5]Meanwhile, co-defendants Christopher Robey and Megan Jones were arrested for the subject crime in San Diego, California, on November 6, 2009; the record is unclear on what date co-defendant Joshua Morgan was arrested.

[6]The plea hearing was conducted on August 5, 2010.

On August 2, 2011, the circuit court conducted a sentencing hearing during which the petitioner and his co-defendants all appeared.[7] During the course of the hearing, the circuit court sentenced the petitioner's co-defendants to life in prison with the recommendation that each be eligible for parole after serving fifteen years. With regard to the petitioner, however, the circuit court sentenced him to life in prison without the possibility of parole. It is from the sentencing order that the petitioner now appeals.

## II. Standard of Review

This case comes before this Court upon an appeal from a sentencing order. We have previously explained that "'[t]he Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syl. Pt. 1, in part, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, *State v. James*, 227 W.Va. 407, 710 S.E.2d 98 (2011). Further, "'[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982)." Syl. Pt. 6, *State v. Slater*, 222 W.Va.

---

[7]At the sentencing hearing, the circuit court made reference to the fact that the guilty pleas of the petitioner and his co-defendants to felony murder were accepted during a prior hearing conducted on May 19, 2011. The transcript of that hearing and the circuit court's order resulting therefrom were not made a part of the appendix record in this appeal.

4

499, 665 S.E.2d 674 (2008). With these standards in mind, we proceed to address the petitioner's argument.

## III. Discussion

The sole issue in this appeal is whether the circuit court committed constitutional error in imposing upon the petitioner a sentence of life in prison without the possibility of parole. The petitioner argues that the circuit court "depart[ed] from the plea agreement and the joint recommendation of counsel as to all co-defendants that they receive a recommendation for eligibility for parole at sentencing[,]" and, as a result, he received a sentence disparate to the more lenient sentences imposed upon his co-defendants for the same crime. The petitioner further argues that the circuit court failed to make appropriate findings in support of the petitioner's sentence and that this matter should at least be remanded for a new sentencing hearing. In contrast, the State contends that the circuit court considered the appropriate factors and correctly determined that the petitioner and his co-defendants were not similarly situated and that disparate sentences were warranted.

This Court has previously held that

> [d]isparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and

maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone.

Syl. Pt. 2, *State v. Buck*, 173 W.Va. 243, 314 S.E.2d 406 (1984).[8] The record in this case clearly reflects that the circuit court considered the foregoing factors in its imposition of the petitioner's sentence. Specifically, a diagnostic (psychological) evaluation, which was ordered by the circuit court at the conclusion of the plea hearing,[9] indicated that the petitioner

> presented little remorse over the death of [Mr. Leeson], and did not demonstrate any fear or sadness until he was asked about prison. It was at that time that he broke down and stated, "I'll never see my twenties outside of prison. . . . I deserve it though."

---

[8]In *Buck*, this Court upheld the disparate sentences imposed upon the appellant (thirty years) and his co-defendant (one year) for aggravated robbery given that the appellant planned the crime and struck the victim with a tire iron. 178 W.Va. at 508, 361 S.E.2d at 473. In recognizing the basis for the disparate sentence in *Buck*, we explained that the co-defendant tried to prevent the appellant from seriously injuring the victim; admitted his guilt; and testified against the appellant. *Id*; *see also State v. Booth*, 224 W.Va. 307, 315-16, 685 S.E.2d 701, 709 (2009) (finding no abuse of discretion in sentencing appellant to eighty years for first degree robbery as compared to three co-defendants' sentences of fifty, one, and five years, respectively, given that appellant "actively pursued the plan to prey on the elderly to steal money[;]" "attempted to obtain access, on at least three occasions, to [one of the victim's] home[s][;]" and "pulled on [the] purse [of the second victim] causing her to fall and resulting in her significant injuries." Additionally, these actions occurred while appellant "was free on bond for the alleged commission of another felony[,] [and] [h]is post-arrest conduct for his previous charges clearly evidences a lack of desire to change or receive help."); *State v Damron*, 213 W.Va. 8, 16, 576 S.E.2d 253, 261 (2002) (concluding that appellant's sentences of one to fifteen years for burglary and one year for petit larceny was not disproportionate to State's decision not to prosecute co-defendant because appellant was also serving federal sentence; facing charges in another county; instigated crimes at issue; and threatened to fire co-defendant, who was appellant's employee, if he did not participate in crimes.).

[9]As indicated above, the circuit court held in abeyance its acceptance of the petitioner's guilty plea pending receipt of the presentence investigation report and the sixty-day diagnostic evaluation.

6

His personality profile is consistent with an anti-social personality disorder.

The court-ordered diagnostic evaluation further indicated that

the likelihood of future recidivism is considered high. Factors contributing to recidivism risk include prior legal history,[10] impulsivity, age,[11] and lack of empathy and maturity. Factors that mitigate his risk of future recidivism include intelligence/cognitive skills, employability,[12] and lack of substance abuse[13]. . . . His behavior in the commission of this murder is purported to be the result of impulsivity and lack of forethought, however the circumstances of his actions indicate multiple opportunities to have made different decisions, any of which would have altered the outcome of this situation and likely prevented the death of Mr. Leeson.

(footnotes added). Most importantly, the fact that it was the petitioner who actually killed

Mr. Leeson weighed heavily in the circuit court's decision to sentence him to life in prison

---

[10]According to the presentence investigation report, the petitioner's prior criminal record includes a shoplifting conviction in 2009. He was also previously arrested for possession of marijuana, but the record is unclear whether he was convicted for that offense. The record further indicates that the petitioner was arrested in 2007 for breaking and entering, which charge was dismissed.

[11]The petitioner was eighteen years old at the time he committed Mr. Leeson's murder.

[12]The petitioner completed school through the ninth grade and later obtained his GED; he held various jobs from April 2008 until the time of the murder.

[13]The presentence investigation report indicated that the petitioner admitted to regularly using marijuana from age sixteen to eighteen, but denied abusing any other illicit drugs and further denied abusing alcohol.

7

without mercy; indeed, during the sentencing hearing, the circuit court reasoned that "you're the one who swung the bat, not once, not twice, but three times."[14]

Without hesitation, this Court concludes that the petitioner's admitted role in the callous and brutal murder of Mr. Leeson clearly justified a sentence disparate from his co-defendants. The petitioner mercilessly beat his unsuspecting victim with a baseball bat and then locked the doors to the victim's home so that aid could not easily be rendered.[15] Furthermore, the record before the circuit court demonstrated that the petitioner showed little remorse for Mr. Leeson's death and, in fact, bragged to his co-defendants about what he had done. Although the petitioner's prior criminal record did not involve violent crimes, it was determined that "the likelihood of future recidivism is considered high." Given all of the above, we conclude that the circuit court did not abuse its discretion in imposing a harsher sentence upon the petitioner than upon his co-defendants. *See Buck*, 178 W.Va. at 508, 361 S.E.2d at 473. Likewise, we find no merit to the petitioner's contention that the circuit court failed to make appropriate findings to support the sentence imposed.

---

[14]In sentencing the petitioner's co-defendants to life with the recommendation of parole, the circuit court also stated that "there will be a note put in [each of] your files that the Court does not feel that each of you deserve to get out at the end of 15 years."

[15]When the victim's daughter-in-law enlisted the assistance of law enforcement to check on his welfare two days after the murder, they had to force their way into the home.

## IV. Conclusion

Based upon the foregoing, the October 16, 2012, order of the Circuit Court of Harrison County is hereby affirmed.

Affirmed.