# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Jason William Holstein,**
**Petitioner Below, Petitioner**

**FILED**

**March 24, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)   No. 16-0420** (Kanawha County 15-P-375)

**David Ballard, Warden,**
**Mount Olive Correctional Complex,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jason William Holstein, pro se, appeals the April 19, 2016, order of the Circuit Court of Kanawha County dismissing his petition for a writ of habeas corpus without prejudice pursuant to Rule 4(c) of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings. Respondent David Ballard, Warden, Mount Olive Correctional Complex, by counsel Shannon Frederick Kiser, filed a summary response in support of the circuit court's order. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 19, 2009, petitioner and co-defendants Larry Cantrell and Joshua Taylor traveled to the home of David Scarbro in Chelyan, West Virginia, with the intent to rob him of drugs and money. The trio was armed with a handgun and a sawed-off shotgun. Petitioner and Mr. Cantrell obtained these weapons from a third-party after which they modified the shotgun in preparation for the instant crimes.

During the course of the robbery, Mr. Scarbro was repeatedly struck with the guns, causing him to suffer gaping wounds to his head, face, and other areas of his body, and he was repeatedly kicked in the ribs. The victim's wife returned home as the robbery was proceeding. Mrs. Scarbro reported that, as she neared the residence, she heard her husband arguing with a man. After she began beating on the front door, it opened, and she was pulled inside the home and thrown into a

1

chair. Two masked men and her husband then ran onto the porch, at which time she heard two gun shots. Mrs. Scarbro found her husband lying motionless on the porch. Mr. Scarbro had been shot once in the back at close range and died at the scene from his injuries. Mrs. Scarbro did not know who shot her husband.

Following an investigation by the Kanawha County Sheriff's Department, petitioner, Mr. Cantrell, and Mr. Taylor were arrested. According to Mr. Cantrell, petitioner would not stop saying that "[petitioner] finally got one, talking about killing someone." When Mr. Taylor was questioned by authorities, he stated that, as he ran out of the victim's home, he saw petitioner shoot Mr. Scarbro as he lay face down on the porch. In contrast, petitioner denied shooting Mr. Scarbro, reporting instead that Mr. Taylor said that the gun "just went off."

All three men were indicted on two counts of breaking and entering, one count of attempted armed robbery, and one count of first-degree murder (felony murder). Mr. Cantrell and Mr. Taylor each pled guilty to first-degree felony murder, and both were sentenced to life imprisonment with the possibility of parole.

On April 12, 2010, petitioner entered into a plea agreement with the State, in which he agreed to plead guilty to first-degree felony murder. In return, the State agreed to dismiss the other counts in the indictment and to stand silent at sentencing. Later this same day, a plea hearing was held before the circuit court. During this hearing, the petitioner testified that he read, reviewed, and discussed the plea agreement with his attorney prior to signing the agreement. The attorney confirmed this joint review and expressed his belief that the plea was in petitioner's best interest. The circuit court asked petitioner whether he understood the crimes he was charged with committing. Petitioner responded affirmatively. When questioned about his education, petitioner stated that he had a high school diploma and attended barber college.

Petitioner informed the circuit court that he was diagnosed with bipolar disorder; however, the circuit court observed that petitioner met with his attorney for approximately three hours that morning and asked whether counsel found petitioner to be "lucid" and whether he understood the purpose of the plea hearing. In response, the attorney described petitioner as "lucid and knows where he is and why we're here and what he's doing." Petitioner's attorney also responded affirmatively when asked whether petitioner was "oriented as to time and place" and able "to recall past events."

Recounting his contact and collaboration with his client, petitioner's attorney stated he reviewed discovery received from the State and discussed all counts in the indictment with petitioner and the defense to be presented based on that evidence. Petitioner's attorney further stated that he hired an investigator to interview witnesses, served subpoenas, and was prepared to go to trial if that was petitioner's choice.

In response to the circuit court's inquiry, petitioner stated that he was completely satisfied with his attorney's representation. Specifically, when the circuit court asked petitioner if his attorney did everything he wanted the attorney to do, petitioner answered, "[h]e's done everything I asked." Furthermore, when the circuit court queried whether petitioner's attorney entered into

2

plea negotiations "with your permission and consent," petitioner responded, "Yes ma'am. He did." Petitioner explained that he had his attorney "consult with my family on my behalf, and we feel that this is probably for the best." Petitioner further testified, as follows:

Q. Has anyone promised you a lenient sentence or made any promise to you other than as set forth in the . . . plea agreement?

A. No, ma'am.

Q. Has anyone threatened, intimidated, coerced or pressured you in any manner to give up your constitutional rights to a trial?

A. No, ma'am, they haven't.

Q. Okay. And are you telling me . . . that you are here today asking me to accept this agreement in [sic] your plea of your own free will?

A. Yes, ma'am. I am.

Q. This is your decision?

A. Yes, ma'am.

Prior to accepting petitioner's guilty plea, the circuit court addressed with the petitioner each of the rights he would be relinquishing through his guilty plea, including the presumption of innocence; the right to a trial before an impartial jury of twelve persons; the State's burden of proving his guilt beyond a reasonable doubt; the right against compelled self-incrimination; the right to present witnesses to testify on his behalf; and the right to question the State's witnesses and to confront his accusers. Petitioner testified that he understood each of the rights he would be relinquishing through his guilty plea.

Satisfied petitioner understood the rights he would be relinquishing and that the decision to enter a guilty plea was of his own free will, the circuit court explained the potential sentence that could be imposed if it accepted his guilty plea to first degree felony murder. Petitioner affirmed his understanding that he could be sentenced to life in prison without the possibility of parole; similarly, petitioner's attorney confirmed that he explained to petitioner what life without the possibility of parole meant; that sentencing would be entirely in the court's discretion; and that the State would stand silent as to sentencing pursuant to the terms of the plea agreement.

Finally, before allowing petitioner to enter his guilty plea, the circuit court provided him with another opportunity to confer with his attorney. Petitioner's attorney informed the circuit court that he conferred with petitioner, who was ready to proceed at that time. Petitioner then entered his guilty plea to first-degree murder The circuit court found that petitioner freely and voluntarily entered his guilty plea with the advice and consultation of competent legal counsel and had understood the consequences of his plea, including the possible penalties the court could

impose at sentencing. The circuit court accepted petitioner's guilty plea and adjudged him guilty of first-degree murder.

Subsequent to petitioner's conviction and prior to his sentencing, the Adult Probation Department prepared a presentence report. This lengthy report describes petitioner as "well known to authorities and Officers in the Adult Probation Department, [Division] of Corrections, Home Confinement, Parole, and Juvenile Probation due to his extensive criminal history[,]" which includes convictions for eight felony breaking and enterings. As reflected in the report, petitioner committed the instant crime within three months of being discharged from parole and "admitt[ed] to planning the robbery in great detail and advising others [Mr. Cantrell and Mr. Taylor] how to commit such a robbery 'properly.'" The report also contains statements taken from Mr. Cantrell, Mr. Taylor, and others, all of which indicated that witnesses observed petitioner shooting the victim, heard him admit to shooting the victim, or heard him brag about doing so afterward.

With regard to the question of whether petitioner was remorseful for the instant crime, the presentence report states:

> Records show [petitioner] has a history of failing to tell the truth and trying to manipulate others . . . to extricate himself from problematic situations . . . while, at the same time, appearing as though he is seemingly compliant, worthy and capable of rehabilitation or change, and sincerely sorry for his actions and wrongdoings. As this Officer has repeatedly dealt with [petitioner] for years and is quite familiar with him, this Officer cannot stress enough a belief that [petitioner] . . . is masterful at appearing remorseful, genuine, and sincere, though all, in this Officer's opinion, is a performance or ruse.

The probation officer concluded the report by stating:

> [Petitioner] . . . expressed no sincere remorse for his actions or towards the victim, accepts little to no responsibility, and provided, yet again, a statement that seems to indirectly portray himself as a victim of sorts or as someone who is inexperienced or a follower . . . It is this Officer's opinion [ ] [that petitioner] is simply good at playing the game.

The circuit court held a sentencing hearing on June 30, 2010. During this hearing, petitioner's attorney confirmed that he had reviewed the presentence report with petitioner. When the circuit court asked whether there were any factual matters contained in the presentence report that petitioner wished to raise, his attorney responded, "No. There is nothing that is factually inaccurate in the report. . . ." Petitioner presented the testimony of four witnesses offered in mitigation of his sentence: his mother, his stepfather, his youngest brother, and a family friend. During his allocution, petitioner testified that "I don't expect to get mercy today" and apologized to the circuit court, the victim's family, and to his family and asked for their forgiveness. Upon its consideration of the witnesses' testimony and petitioner's allocution, the circuit court sentenced petitioner to life imprisonment without the possibility of parole.

4

Petitioner appealed his conviction and sentence to this Court. In *State v. Holstein*, 235 W.Va. 56, 59, 770 S.E.2d 556, 559 (2015), petitioner argued (1) his guilty plea to first-degree murder was not entered knowingly, voluntarily, and intelligently; and (2) his sentence was disproportionate to the sentences imposed upon his co-defendants. With regard to the first issue, we found that the circuit court properly accepted petitioner's guilty plea on the ground that "[t]he record is simply bereft of any such evidence" that he did not enter his plea knowingly, voluntarily, and intelligently *id.* at 67, 770 S.E.2d at 567.

With regard to the second issue, we reiterated the following:

> [D]isparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age[,] and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone.

*Id.* at 68, 770 S.E.2d at 568 (internal quotations and citations omitted). We further noted the probation officer's opinion regarding the sincerity of petitioner's expressed remorse and recitation of petitioner's extensive criminal history. *Id.* Therefore, we concluded that—even if the statements identifying petitioner as the shooter, contained in the officer's presentence report, were inaccurate—the circuit court did not abuse its discretion by imposing a harsher sentence upon petitioner than the sentences imposed upon his co-defendants. *Id.* Accordingly, we affirmed petitioner's conviction and sentence. *id.* at 68-9, 770 S.E.2d at 568-9.

On September 3, 2015, petitioner filed a petition for a writ of habeas corpus raising the following grounds for relief: (a) his sentence was unconstitutionally disproportionate; and (b) his attorney provided ineffective assistance during plea negotiations. With regard to petitioner's second claim, his allegations of ineffective assistance can be grouped into the following categories: (1) his attorney's failure to investigate and familiarize himself with the facts of petitioner's case; (2) his attorney's failure to move for a psychological evaluation; (3) his attorney's failure to object to the statements in the presentence report that identified petitioner as the shooter; (4) his attorney's failure to offer adequate evidence in mitigation at sentencing; and (5) his attorney's advice caused him to expect that he would receive a life sentence of incarceration with the possibility of parole.

By order entered on April 19, 2016, the circuit court found that "no hearing [was] required" on petitioner's grounds for relief and dismissed the petition pursuant to Rule 4(c) of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings, which provides, as follows: "If the petition contains a mere recitation of grounds without adequate factual support, the court may enter an order dismissing the petition, without prejudice, with directions that the petition be refiled containing adequate factual support. The court shall cause the petitioner to be notified of any summary dismissal." As part of its order, the circuit court directed that "a copy of this order [be served] upon the petitioner."

Petitioner now appeals the circuit court's April 19, 2016, order dismissing without prejudice his habeas petition. We apply the following standard of review in habeas appeals:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006). A court having jurisdiction over habeas corpus proceedings may deny a petition for a writ of habeas corpus without a hearing or appointment of counsel "if the petition, exhibits, affidavits or other documentary evidence filed therewith show to such court's satisfaction that the petitioner is entitled to no relief." Syl. Pt. 1, *Perdue v. Coiner*, 156 W.Va. 467, 194 S.E.2d 657 (1973).

On appeal, petitioner contends that his factual allegations were sufficient to warrant a habeas corpus hearing and appointment of counsel prior to any ruling on his petition. Respondent counters that the circuit court properly dismissed the petition based on our decision in *Holstein*. We agree with respondent.

With regard to petitioner's first ground for relief, petitioner asserts that he expected to receive life imprisonment with the possibility of parole and the fact that he did not means that he received a harsher sentence than both of his co-defendants, who received life sentences under which they will become parole eligible. We find that the record contradicts petitioner's contention that he expected to receive life imprisonment with the possibility of parole because, during his allocution, he stated that "I don't expect to get mercy today." *Holstein*, 235 W.Va. at 63, 770 S.E.2d at 563. Moreover, we found in *Holstein* that the circuit court did not abuse its discretion by imposing a harsher sentence upon petitioner than the sentences imposed upon his co-defendants, noting that such sentence disparity among co-defendants was "not per se unconstitutional." *id.* at 68, 770 S.E.2d at 568 (quoting Syl. Pt. 3, *State v. Robey*, 233 W.Va. 1, 754 S.E.2d 577 (2014)). Therefore, we conclude that petitioner's contention that his sentence was unconstitutionally disproportionate was previously and finally adjudicated in *Holstein*.

With regard to petitioner's second ground for relief, claims of ineffective assistance of counsel are governed by the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984): (a) counsel's performance was deficient under an objective standard of reasonableness; and (b) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Syl. Pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Petitioner's allegations of ineffective assistance are based on the following asserted deficiencies: (1) his attorney's failure to investigate and familiarize himself with the facts of petitioner's case; (2) his attorney's failure to move for a psychological evaluation; (3) his attorney's failure to object to the statements in the presentence report that identified petitioner as the shooter; (4) his attorney's failure to offer adequate evidence in mitigation at sentencing; and (5) his attorney's advice implying that he would receive a life sentence of incarceration with the possibility of parole. We address these allegations seriatim.

First, our decision in *Holstein* reflects that petitioner and his attorney received discovery from the State and discussed all counts in the indictment and the defense to be presented based on that evidence. 235 W.Va. at 61, 770 S.E.2d at 561. Moreover, the transcript of the April 12, 2010, plea hearing reflects that petitioner's attorney stated that he hired an investigator to interview witnesses, served subpoenas, and was prepared to go to trial if that was petitioner's choice. Petitioner contends that his attorney should also have filed a motion to obtain the grand jury transcript, but fails to state how that transcript would have aided the defense except for a vague allegation that it could have been used to impeach witnesses. We find that such an allegation is insufficient to show ineffective assistance given that petitioner waived his right to present and cross-examine witnesses by pleading guilty. We similarly reject petitioner's contention that his attorney should have retained an expert in crime scene reconstruction given that he also waived his right to have the State prove its case beyond a reasonable doubt.

Second, we find that petitioner's attorney's failure to move to have petitioner undergo a psychological evaluation was not ineffective assistance given our finding in *Holstein* that, "even if we were to assume . . . petitioner's alleged bipolar diagnosis is accurate, the record flatly contradicts his contention that his guilty plea was not intelligently and voluntarily made." *Id.* at 67, 770 S.E.2d at 567. We explained that "[petitioner's] answers to the circuit judge's questions were responsive and clear" and that "[he] repeatedly assured the circuit judge that he understood each of the constitutional rights that he would be waiving through his guilty plea and that the decision to plead guilty was his alone." *Id.*

Third, we find that petitioner's attorney's failure to object to the witness statements contained in the presentence report did not affect the outcome of petitioner's sentencing hearing given our finding that, even if those statements were inaccurate, the circuit court did not abuse its discretion by imposing a harsher sentence upon petitioner than the sentences imposed upon his co-defendants. *Id.* at 68, 770 S.E.2d at 568.

Fourth, we find that petitioner's contention that his attorney's failure to offer adequate evidence in mitigation at sentencing morphs on appeal into an argument that defendants who plead guilty to first-degree murder should have a right to move for a bifurcated mercy phase similar to the right of defendants who proceed to trial to make such a motion. Respondent counters that petitioner's argument is without merit given the facts of his case. We agree with respondent and find that petitioner pled guilty and was sentenced at separate hearings. At the June 30, 2010, sentencing hearing, petitioner's attorney presented the testimony of his mother, his stepfather, his youngest brother, and a family friend. *Id.* at 63, 770 S.E.2d at 563. Therefore, we reject petitioner's contention that his attorney failed to offer adequate evidence in mitigation.

Finally, as previously noted, we find that petitioner's contention that his attorney's advice caused him to expect that he would receive life imprisonment with the possibility of parole is contradicted by the statement petitioner made during his allocution that "I don't expect to get mercy today." *Id.* Therefore, we find petitioner's allegations of ineffective assistance of counsel lack merit and do not warrant a habeas corpus hearing or appointment of counsel. Accordingly, we find that the circuit court did not abuse its discretion in dismissing petitioner's habeas petition with regard to both claims asserted therein.

For the foregoing reasons, we affirm the circuit court's April 19, 2016, order dismissing petitioner's petition for a writ of habeas corpus.[1]

Affirmed.

**ISSUED**:   March 24, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

---

[1]As noted by the circuit court, because it dismissed petitioner's habeas petition pursuant to Rule 4(c) of the West Virginia Rules Governing Post-Conviction Habeas Corpus Proceedings, the dismissal will not bar petitioner from filing future petitions.