**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Nicholas Ryan Robey,**
**Petitioner Below, Petitioner**

**vs.) No. 20-1041** (Harrison County 19-C-85-3)

**Donnie Ames, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Nicholas Ryan Robey, by counsel David Mirhoseini, appeals the Circuit Court of Harrison County's December 1, 2020, order denying his petition for a writ of habeas corpus. Respondent Donnie Ames, Superintendent, by counsel Scott E. Johnson, filed a response, to which petitioner replied. On appeal, petitioner argues that his trial counsel was ineffective.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 13, 2009, petitioner, his brother, and two other co-defendants traveled to Clarence Leeson's ("the victim's") home for the purpose of committing burglary. Petitioner knocked on the door of the victim's home, feigning car troubles, and asked to use the victim's telephone to call for assistance. The victim allowed petitioner into the home. Petitioner thereafter secretly let his brother and one of his co-defendants into the home through a back door. Petitioner's brother had a baseball bat and stated his intention to kill the victim. Not wanting the victim to die, petitioner took the bat and stated that he would simply knock the victim unconscious. Petitioner struck the victim on the head three times. The trio stole items from the victim's home, left the home, and locked the doors behind them. Although the victim was purportedly breathing when petitioner left the home, he later died as a result of his injuries. Petitioner fled to North Carolina, where he was apprehended. Petitioner gave a statement at that time regarding his involvement in the crime.

1

During the May 2010 term of the Harrison County Circuit Court, a grand jury indicted petitioner, his brother, and the other co-defendants for felony murder, conspiracy to commit burglary, and grand larceny. In August of 2010, petitioner entered into a written plea agreement whereby he agreed to plead guilty to one count of felony murder in exchange for the State's agreement to dismiss the other charges and recommend a sentence of life with mercy. The terms of the plea agreement expressly set forth that the circuit court was not bound to accept any recommendations as to sentencing and that if petitioner's plea was set aside on appeal, "the other party or parties will have the right to void this agreement and the parties will be restored to their original positions."

At a plea hearing held the same day in August of 2010, the circuit court explained to petitioner that any parole eligibility would be within the court's discretion and that the plea agreement was binding even if the court did not afford mercy. During the hearing, petitioner set forth the factual basis for his plea, and the State proffered the evidence it would have relied upon had petitioner proceeded to trial. At the end of the hearing, the court again advised petitioner of the consequences of entering the plea and held acceptance of the plea in abeyance pending a presentence investigation and a sixty-day diagnostic evaluation. Relevant to this appeal, the diagnostic evaluation indicated that "[c]urrently, [petitioner's] likelihood of future recidivism is considered high." The report nevertheless indicated that there was "reason to believe that [petitioner] may learn skills and maturity during his incarceration and eventually show that he is able to actively and positively contribute to society and behave in a law-abiding manner from here on."

The circuit court held another plea hearing in May of 2011 and reiterated to petitioner that he could not withdraw his guilty plea if the court declined to grant mercy. The court specifically stated that it had "read every single page in the court record in this matter" and that it "reviewed over the last couple of days a number of times the presentence report, the [diagnostic] report." The court accepted petitioner's guilty plea but continued the matter as to sentencing to allow the court to further study the record.

On August 2, 2011, the circuit court held a sentencing hearing. Petitioner's brother and co-defendants were sentenced to life with mercy. The circuit court sentenced petitioner to life without mercy as he had struck the victim, causing his death. After a change in counsel and resentencing for the purpose of appeal, petitioner appealed his sentence to this Court, arguing that the sentence was unconstitutionally disparate from that of his co-defendants. This Court affirmed petitioner's sentence "[w]ithout hesitation." *State v. Robey*, 233 W. Va. 1, 5, 754 S.E.2d 577, 581 (2014).

In March of 2019, without the assistance of counsel, petitioner filed a petition for a writ of habeas corpus. The habeas court appointed petitioner counsel, who filed an amended petition in December of 2019. Relevant to this appeal, petitioner argued that his counsel provided him ineffective assistance when she led him to believe that if he pled guilty to felony murder and received a sentence of life without mercy, he needed only to file an appeal to have the sentence thrown out and receive a new trial. Petitioner further argued that his counsel was ineffective for failing to bring up the diagnostic investigation report when arguing for a lighter sentence.

2

The habeas court held an omnibus hearing in May of 2020, during which petitioner presented the testimony of his trial counsel, April Conner. Ms. Conner testified that she repeatedly spoke to petitioner about his options, including entering into a plea agreement. According to Ms. Conner, she informed petitioner that sentencing was ultimately up to the circuit court and that he could not withdraw his plea if the circuit court sentenced him to life without mercy. Petitioner nevertheless decided to enter the plea and never asked to withdraw the plea, even in light of the substantial gap in time between the entry of his plea and sentencing. Petitioner's habeas counsel inquired of Ms. Conner, "didn't you actually tell [petitioner] that if you filed an appeal from the conviction that that would invalidate the plea agreement, and the State could take him to trial on all of the charges as if there were no plea agreement?" Ms. Conner responded that she would have told him "something to that effect" but denied that she "would have worded it that way." Ms. Conner testified that the plea agreement established that if petitioner's plea was set aside on appeal or through a habeas proceeding, that the State would have the right to void the agreement. Ms. Conner did not believe she would have explained the plea agreement's language to mean that simply filing an appeal would invalidate the plea agreement.

Petitioner's habeas counsel introduced a copy of a letter written by Ms. Conner to the West Virginia Office of Disciplinary Counsel (which was in response to a grievance filed by petitioner) and read the following section from the letter in his questioning of Ms. Conner:

> The subject of an appeal was the source of many conversations I had with [petitioner] both prior to acceptance of the plea agreement and prior to sentencing. I explained in detail to [petitioner] in person that if he wanted to go forward with the plea agreement that there were no guarantees that that the [circuit c]ourt would actually make the recommendation of mercy, and that if the [circuit c]ourt did not, then [petitioner] could not appeal this sentence without subjecting himself to having the plea set aside and going to trial on all counts of the Indictment that pertained to him.

He further read from the letter:

> I reminded [petitioner] that the [circuit c]ourt was not bound to make the recommendation of mercy. [Petitioner] and I discussed if the [circuit c]ourt did not make the recommendation of mercy, that under the terms of the plea agreement there could be no appeal, otherwise, there would be a trial on all counts of the Indictment that pertained to him.

Ms. Conner agreed that she had written the letter and stated that she informed petitioner that there was a possibility that an appeal would revoke his plea agreement. Petitioner's counsel questioned her, "You didn't say possibility, you said it would revoke his plea agreement?" Ms. Conner responded, "Fine. And the paragraph that you didn't read says at all times [petitioner] expressed his understanding . . . that even if he received life without the recommendation of mercy there would be no appeal." Ms. Conner did not believe that petitioner could have understood her communication to mean that there was no risk in pleading guilty because filing an appeal would automatically invalidate his plea agreement.

Petitioner testified that he entered into the plea agreement because Ms. Conner led him to believe that if he was sentenced to life without mercy, he needed only to file an appeal to get a "do over." Petitioner testified that Ms. Conner's letter to the Office of Disciplinary Counsel demonstrated that she had told him so. Petitioner testified that, had he known that he would not be able to set aside his plea agreement by filing an appeal, he would have insisted on proceeding to trial.

By order entered on December 1, 2020, the habeas court denied petitioner's petition for a writ of habeas corpus. The habeas court found that petitioner failed to demonstrate that Ms. Conner gave erroneous legal advice or that he would have insisted on going to trial but for that advice. According to the habeas court, while Ms. Conner admitted that she "may" have said something supposedly leading petitioner to believe that filing an appeal would create an automatic "do over," she also testified that she repeatedly advised him that an appeal could "possibly" void his plea agreement and that by filing an appeal he subjected himself to the "risk" that the plea agreement could later be rescinded. The habeas court also found that the circuit court advised petitioner that he could be sentenced to life without the possibility of parole and that his plea could not be withdrawn if he received that sentence. Further, contrary to petitioner's assertion, the circuit court did, in fact, consider the diagnostic evaluation when determining the appropriate sentence, as did this Court on direct appeal. The habeas court thus found that, regardless of whether Ms. Conner mentioned the mitigating statement in the diagnostic evaluation, it was evaluated by both courts.

The habeas court further found that there was no evidence of prejudice aside from petitioner's own testimony. Petitioner never tried to withdraw his plea and voluntarily admitted to factual guilt after being cautioned that the circuit court had the discretion to disregard the State's sentencing recommendations. The habeas court further pointed out that Ms. Conner testified that (1) she and petitioner appeared at three hearings wherein petitioner was asked whether he wished to proceed with the plea agreement and on each occasion he stated that the wanted to proceed, (2) she spent a significant amount of time interviewing and advising petitioner before he entered his guilty plea given his young age and the seriousness of the charges, (3) she explained and reviewed discovery with petitioner, including his own incriminating statements and the testimony of his co-defendants, (4) she explained that these statements made success at trial extremely unlikely, (5) petitioner made statements admitting to both the murder and his subsequent flight, (6) she explained to petitioner several times that the circuit court was not bound by the parties' recommendations of mercy and that an appeal and remand could allow the State to re-charge petitioner, and (7) she informed petitioner that if his case was remanded on appeal, the State would not be obligated to recommend a sentence of life with mercy. The habeas court found that the record did not indicate that petitioner would have sought a trial but for any allegedly erroneous advice from Ms. Conner and that petitioner offered only his own self-serving testimony at the omnibus hearing in support of this claim. Indeed, the record demonstrated that petitioner faced overwhelming evidence of his guilt if he would have proceeded to trial. Given the foregoing, the habeas court found that petitioner failed to establish that Ms. Conner provided ineffective assistance and denied his petition for a writ of habeas corpus. Petitioner appeals the December 1, 2020, order denying him habeas corpus relief.

On appeal, petitioner argues that his counsel was ineffective for two reasons. First, petitioner avers that his counsel provided "manifestly erroneous" legal advice during the plea

4

process. According to petitioner, Ms. Conner advised him that he could void his guilty plea to felony murder by filing an appeal and then go on to have a trial on all three counts as charged in the indictment. This advice led petitioner to believe that he had "nothing to lose" by pleading guilty as he could simply file an appeal and "get a do-over from a jury." Petitioner argues that, but for Ms. Conner's manifestly erroneous advice, he would not have "taken the fall for his brother or that on a do-over jury trial he would have testified that his brother was the one who struck the victim with a bat, and thus, there is a reasonable probability that [petitioner] may have received mercy for his Felony Murder conviction."[1] Second, petitioner argues that Ms. Conner's counsel was ineffective as she failed to bring petitioner's favorable diagnostic evaluation to the circuit court's attention. Petitioner states that the evaluation report indicated that there was "reason to believe that [petitioner] may learn skills and maturity during his incarceration and eventually show that he is able to actively and positively contribute to society and behave in a law-abiding manner from here on." Petitioner contends that neither the circuit court nor this Court on appeal gave any consideration to the report. Petitioner argues that Ms. Conner's failure to bring this evaluation to the circuit court's attention constitutes deficient performance and that, but for this failure, there is a reasonable probability that the circuit court or this Court would have found that his sentence should have been life with mercy.

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *Anstey v. Ballard*, 237 W. Va. 411, 787 S.E.2d 864 (2016).

Regarding claims of ineffective assistance of counsel, we have held that

> [i]n the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Moreover,

> [i]n cases involving a criminal conviction based upon a guilty plea, the prejudice requirement of the two-part test established by *Strickland v. Washington*,

---

[1]During the omnibus hearing, petitioner testified that he did not strike the victim and that he was taking the fall for his brother.

466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), demands that a habeas petitioner show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Syl. Pt. 6, *State ex rel. Vernatter v. Warden, W. Va. Penitentiary*, 207 W. Va. 11, 528 S.E.2d 207 (1999). Lastly, "[f]ailure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *Id.* at 17, 528 S.E.2d at 213 (citing *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 321, 465 S.E.2d 416, 423 (1995)).

Petitioner fails to show that his counsel's performance was deficient under an objectively reasonable standard. First, petitioner failed to prove that his counsel informed him that filing an appeal would automatically void his plea agreement and result in a "do-over" trial. In support of his argument, petitioner generally cites to a letter written by Ms. Conner to the Office of Disciplinary Counsel and her testimony at the omnibus hearing, claiming that Ms. Conner "confirmed that she had discussions with [petitioner] leading him to think that if he filed an appeal it would invalidate his guilty plea." However, a review of the record reveals that Ms. Conner repeatedly denied that she had advised petitioner that an appeal would automatically void the plea agreement and, rather, advised him as to the *possibility* of such. When reviewing Ms. Conner's letter and testimony as a whole, it is clear that she repeatedly advised petitioner as to this possibility; petitioner cannot simply select statements out of context to support his claim. Moreover, the habeas court found that, while Ms. Conner "may" have said something supposedly leading petitioner to believe that filing an appeal would void the plea agreement, she repeatedly advised petitioner that filing an appeal would *possibly* void the plea agreement or place him *at risk* of being tried on all counts charged in the indictment, thereby correcting any statement to the contrary. The habeas court further found that the circuit court correctly advised petitioner as to its discretion to disregard sentencing recommendations and petitioner's inability to appeal the same. Accordingly, petitioner has failed to meet the first prong of the *Strickland/Miller* test, which is fatal to his habeas claim.[2]

Second, petitioner failed to prove that his counsel's performance was objectively unreasonable for failing to raise the diagnostic evaluation at sentencing. We first note that petitioner relies on a single sentence in the diagnostic evaluation report to support his characterization of the report as "favorable." Indeed, the report also included negative statements

---

[2]Even if we assume that petitioner met the first prong of the *Strickland/Miller* test, we find that he failed to establish that but for Ms. Conner's advice, he would have insisted on going to trial. In reviewing the evidence against petitioner, he fails to demonstrate that going to trial would have been a rational decision under the circumstances. Petitioner was fully informed of the evidence against him, which included his flight, his own statement to police wherein he admitted to striking the victim with a baseball bat, as well as the testimony/statements of each of his three co-defendants. The habeas court found that petitioner would have faced "overwhelming evidence of his guilt" had he proceeded to trial. Based on this evidence, a rational person would have accepted a plea offer that provided the best possible outcome, which in this case was a recommendation by the State of life with the possibility of parole. Accordingly, petitioner likewise fails to meet the second prong of the applicable test.

about petitioner, which he fails to point out. For instance, the diagnostic evaluation report reveals that petitioner showed little remorse over the death of the victim, demonstrated illegal behavior patterns, consistently exhibited poor impulse control and character judgment, and was considered at high risk for future recidivism. Importantly, the report, which was performed by an evaluator at the Anthony Correctional Center (a youthful offender program), concluded that petitioner was not an appropriate candidate for the program. Accordingly, petitioner's emphasis of the single favorable sentence in the report is meritless when reviewing the report as a whole. Moreover, the record reveals that, contrary to petitioner's assertion, the circuit court was aware of the diagnostic evaluation report and had considered the same in sentencing petitioner. At the plea hearing wherein the circuit court officially accepted petitioner's plea, it specifically stated that it had reviewed the diagnostic evaluation report "a number of times." As such, the circuit court was aware of the contents of the report prior to sentencing. Furthermore, this Court was likewise aware of the report as we cited to it in our memorandum decision affirming the circuit court's sentencing order. *See Robey*, 233 W. Va. at 4, 754 S.E.2d at 580. Based on the foregoing, petitioner fails to establish that Ms. Conner's failure to specifically raise the diagnostic evaluation report was objectively unreasonable given that it was generally unfavorable to petitioner and the circuit court was aware of its contents. Therefore, petitioner fails to establish the first prong of the *Strickland/Miller* test and, as a result, his habeas corpus claim must fail.

For the foregoing reasons, we affirm the circuit court's December 1, 2020, order denying petitioner's petition for a writ of habeas corpus.

Affirmed.

**ISSUED:** August 31, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn