THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAWN MAXINE BROOKS, Defendant-Appellant.

Fourth District   No. 14837

Opinion filed March 8, 1979.

Richard J. Wilson, of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

The defendant was convicted in a jury trial of the unlawful delivery of a controlled substance, MDA—chemically, a drug related to amphetamines. A publication of the Drug Enforcement Administration indicates the use of the drug does not result in the visual and auditory distortions which mark the use of LSD. The amount of drugs here involved was .6 of a gram, or 600 milligrams, delivered to an undercover agent or informer for the Multi County Enforcement Group.

Upon an original appeal wherein the conviction and a sentence of 1 to 3 years were involved, this court affirmed the conviction. There was a serious issue of entrapment in that appeal. We vacated the sentence and remanded for a further sentencing hearing. The reason was the express conclusion of this court that the sentencing judge, because of a predisposition to incarcerate drug offenders, did not afford the requisite opportunity for the defendant to be granted probation as a meaningful sentence alternative. (*People v. Brooks* (1977), 46 Ill. App. 3d 1071 (order under Supreme Court Rule 23).) We provided that the new sentencing hearing be before a different judge.

Upon remand, the case was assigned to Judge Sam Harrod III.

Initially, and indeed several times during the hearing, the trial court judge to whom the case was then assigned expressed some doubt as to the authority of this court to order a hearing before a different judge. After reference to section 5—4—1(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1977, ch. 38, par. 1005—4—1(b)), Judge Harrod stated:

"[T]he Appellate Court's opinion seems to be contrary to that statute and I think the record should simply reflect this court's concern in that regard. However, we will proceed as the Appellate Court has directed whether they had that power or not, I do not know."

Later in the sentencing hearing, he again observed:

"And I again, just for the record, point out my concern that I am not sure the Appellate Court had the authority to do that and the legislature has said in 1005—4—1(b) 'The judge who presided at the trial or the judge who accepted the plea of guilty shall impose the sentence unless he is no longer sitting as a judge in that court.'

Judge Townley is still sitting as a judge and he certainly would not be willing to handle a resentencing if the Appellate Court says that he shouldn't.

I am not certain this is correct. Perhaps the case will be reversed on appeal on that point. I don't know."

In our original Rule 23 disposition, we made express mention of *People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168, where the supreme court determined that there was a need for resentencing because the trial court judge arbitrarily denied probation to a defendant who fell within the trial judge's category of disfavored offenders. The supreme court there expressly ordered resentencing before a different judge. The statutory provision referred to by the trial court here was in full force and effect at that time.

We cannot escape the strong implication found in this record that the sentencing judge held doubt as to the validity of our order and that he was defending and reimposing the original sentence because of that fact.

This offense happened in September 1974. The defendant was then a student at Illinois State University. The nature of the drug involved has been related to us in supplemental briefs. The quantity was only .6 of a gram or 600 milligrams. The "dosage" is said to range between 150 to 500 milligrams. The average time that MDA affects a user is a period of some 8 to 12 hours. Counsel, at the request of this court, have supplied considerable research information to us as to the nature of the drug and its effect upon its user. Such was not presented to the trial court, nor does the record suggest that it was requested.

Although the defendant stated that the .6 of a gram here involved could last 2 or 3 months, the information before us rather clearly indicates

that the quantity involved would supply about 4 or 5 "doses" and that such could affect a user for about 48 to 60 or so hours. While there may be some basis for debate as to the dosage or length of time of effect of the drug, we are not here dealing with a quarter-year's supply as the trial court concluded from the defendant's statement.

In *People v. Wilson* (1977), 47 Ill. App. 3d 220, 361 N.E.2d 1155, Mr. Justice Trapp, speaking for a unanimous court, noted:

"The statutory standards (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—1) provide that in imposing a sentence of imprisonment, the court should ascertain that (1) imprisonment is necessary for the protection of the public; or (2) the offender is in need of correctional treatment that can most effectively be provided by a sentence to imprisonment, or (3) probation or conditional discharge would deprecate seriousness of the offender's conduct and would be inconsistent with the ends of justice.

In adopting the Controlled Substances Act, (ch. 56½, par. 1100), the legislature described its intent among other things as being to deter the unlawful and destructive abuse of controlled substances and to penalize most heavily the illicit traffickers and profiteers of controlled substances, who propagate and perpetuate the abuse of such substances with reckless disregard for its consumptive consequences upon every element of society, but continued that it was not the intent of the legislature: 'to treat the unlawful user or occasional petty distributor of controlled substances with the same severity as the large-scale, unlawful purveyors and traffickers of controlled substances. * * *'

To this end, the legislature stated that it had provided wide latitude in sentencing discretion to enable the imposing of penalties 'in each case which are appropriate for the purposes of this Act.' " 47 Ill. App. 3d 220, 221-22, 361 N.E.2d 1155, 1157.

This offense is the first and only offense of this defendant. She has been on bail pending this review process and it appears that bail was fixed without objection by the People. Absolutely everything in this record regarding this defendant is favorable. She has completed college. She is gainfully employed. She is working nights at an "extra" job as a counselor at a runaway house. She is from an excellent family background and enjoys strong support from her father and siblings, all of whom have attended college. There is no indication whatsoever of any prior involvement with the criminal law as an adult or as a juvenile. There is no suggestion of any antisocial conduct, behavior, or even thought on the part of this defendant.

The trial court in concluding that probation was not a meaningful sentence alternative made several observations which need to be

discussed. The first relates to his conclusion of the necessity for incarceration because of the offense. Judge Harrod said:

> "It appears that this defendant does have a pretty fine record since the time of—I guess since September 6, 1974. But to rely solely on that record would be to say that if a person commits a crime, if they don't do anything after that then effectively they should escape punishment or any responsibility for the original offense. I don't think society can live with that *especially in regards to drugs.*" (Emphasis added.)

Further, the trial court observed that it is easy to say that this is just one sale and that this girl is not a dealer. He then expressed the opinion that we could not draw that conclusion from the record. "All we know she wasn't proved to be a dealer on any other occasion." We find that to be a disquieting observation. See *People v. Kennedy* (1978), 66 Ill. App. 3d 35, 383 N.E.2d 255.

We find no basis in the record whatsoever to suggest any prior involvement by this defendant and certainly nothing to suggest that she could have been proven to be a dealer.

■■ The defendant in this case sold a very small quantity of a nonnarcotic, nonaddictive drug on one occasion. She had had no other criminal involvement. As was observed in *Wilson,* we cannot discern an intention on the part of the General Assembly to treat the unlawful user or occasional petty distributor with the same severity as purveyors and traffickers in controlled substances.

■■ We must conclude from this record that the sentencing judge here treated this defendant as falling within a category of offenders unfavored by the sentencing judge and that because of that fact he arbitrarily imposed a sentence of imprisonment and denied probation. Thus we are compelled on the basis of this record to vacate the sentence and remand for a further sentence before a different judge.

Sentence vacated and cause remanded.

REARDON, P. J., and TRAPP, J., concur.