314 S.E.2d 406

**STATE of West Virginia**

v.

**Fred Michael BUCK.**

**No. 15938.**

Supreme Court of Appeals of West Virginia.

March 29, 1984.

Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

Hugh Rogers, Jr., Kerens, for appellant.

MILLER, Justice:

This appeal marks the second time that we have been asked to review the sentence imposed in this case. In *State v. Buck*, 170 W.Va. 428, 294 S.E.2d 281, 286 (1982), we remanded "for reconsideration of the sentence and for the development of an appropriate sentencing record" under *State v. Houston*, 166 W.Va. 202, 273 S.E.2d 375 (1980), and *Smoot v. McKenzie*, 166 W.Va. 790, 277 S.E.2d 624 (1981). On remand, despite our intimations that the sentence should be reduced, the trial court reaffirmed its original sentence of seventy-five years. The appellant, Fred Michael Buck, argues that this sentence was unconstitutionally disproportionate to his offense and was grossly disparate to the one year sentence given to his codefendant. He asks us to set the appropriate sentence, rather than once more remanding to the trial court for that purpose.

This case began with the robbery of a store in Job, West Virginia. On October 9, 1978, two men entered a store owned by Fred Kerns and asked him to get them some soft drinks. When Mr. Kerns went to get the drinks from his storeroom, he was struck from behind and robbed of

$1,210.12. Mr. Buck and his codefendant, James Richards, were subsequently apprehended and charged with this offense.

Mr. Buck was convicted of aggravated robbery on February 28, 1979. One month later, Mr. Richards pleaded guilty to a reduced charge of grand larceny, and was sentenced to one year in jail. Mr. Buck was sentenced on May 15, 1979, to seventy-five years in the penitentiary.

On his first appeal, he argued, as he does now, that his sentence was disproportionate to his offense and disparate to the one year sentence given to his codefendant. We remanded so that the trial court would have an opportunity to exercise its sentencing discretion in a manner consistent with the principles articulated in *State v. Houston,* 166 W.Va. 202, 273 S.E.2d 375 (1980), and *Smoot v. McKenzie,* 166 W.Va. 790, 277 S.E.2d 624 (1981). Since both of these decisions were handed down after Mr. Buck was sentenced, the trial court did not have the benefit of their guidance.

Our review of the record indicates that the appellant was only twenty-three when he received his seventy-five year sentence. The record also reveals that this was his first conviction as an adult, and his first prosecution for a crime of violence. At the first sentencing hearing, Mr. Buck expressed his remorse for what had happened, and stated that he would like to make restitution for his crime. These are all factors which weigh in favor of a shorter sentence than the one he received. *See generally Houston,* 166 W.Va. at 207–208, 273 S.E.2d at 378.[1]

In determining whether this sentence is disproportionate to the underlying offense, we must also consider the sentence that can be imposed in this State upon conviction of related offenses. *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205, 210 (1981); *Martin v. Leverette,* 161 W.Va. 547, 244 S.E.2d 39, 43 (1978). It is significant that the sentence Mr. Buck received for aggravated robbery is much higher than he could have received for several more severe offenses. Indeed, if he had actually killed his victim, he might have received a lesser confinement. The seventy-five year sentence is essentially the same as a life sentence, except for one important difference in parole eligibility. Under a life sentence for first degree murder, Mr. Buck would have been eligible for parole in ten years unless the jury had declined to recommend mercy. Under his present sentence, however, he will not be eligible for parole for twenty-five years.[2]

Moreover, the maximum sentences for second degree murder and voluntary manslaughter are less than one-third as long as the sentence he received. *See* W.Va.Code, 61–2–3 (1977) (second degree murder—eighteen years); W.Va.Code, 61–2–4 (1977) (manslaughter—five years).

Courts should also consider the punishment that would be available in other states for the same offense. *Wanstreet,* 166 W.Va. at 532, 276 S.E.2d at 211. In this regard, Mr. Buck's sentence is substantially longer than the maximum permissible sentence for aggravated robbery

---

1. In *Houston,* 166 W.Va. at 208, 273 S.E.2d at 378, we quoted with approval this language from *People v. Adkins,* 41 Ill.2d 297, 301, 242 N.E.2d 258, 260–61 (1968):

" '[The court] may look to the facts of the [crime], and it may search anywhere, within reasonable bounds, for other facts which tend to aggravate or mitigate the offense. In doing so it may inquire into the general moral character of the offender, his mentality, his habits, his social environments, his abnormal or subnormal tendencies, his age, his natural inclination or aversion to commit crime, the stimuli which motivate his conduct, and, as was said in *People v. Popescue,* 345 Ill. 142, 177 N.E. 739, 77 A.L.R. 1199, the judge should know something of the life, family, occupa-

tion and record of the person about to be sentenced.' "

We also noted in *Houston* that "[t]hese guidelines are not materially different than those that are contained in W.Va.Code, 62–12–7, relating to the presentence report." 166 W.Va. at 208, 273 S.E.2d at 378.

2. If a defendant receives a life sentence with a recommendation of mercy, and has not been previously convicted of a felony, he will be eligible for parole after serving ten years of his sentence. W.Va.Code, 62–12–13 (1977). Under the same statute, a defendant who receives a sentence for a definite term of years must serve one-third of his term before becoming eligible for parole.

in a majority of jurisdictions.[3] Among our neighboring states, four out of five have set maximum sentences that are far below seventy-five years. *See* Ky.Rev.Stat.Ann. §§ 515.020, 532.060(2)(b) (ten to twenty years); Md.Ann.Code Art. 27, § 488 (1982) (twenty years); Ohio Rev. Code Ann. §§ 2911.01, 2929.11 (1982) (twenty-five years); 18 Pa.Cons.Stat.Ann. §§ 1103(1), 3701 (Purdon 1983) (twenty years).[4]

■ We recently discussed disproportionality of an aggravated robbery sentence in *State v. Cooper*, 172 W.Va. 266, 304 S.E.2d 851 (1983). There we unanimously concluded as a matter of law that a forty-five year sentence for a nineteen-year-old was disproportionate and stated in Syllabus Point 5:

"Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense."

■ The fact that the codefendant in this case received a much lighter sentence than Mr. Buck, i.e., one year in the county jail, is also relevant to our inquiry.[5] This raises the question of disparity of sentences which we discussed in *Smoot*, 166 W.Va. at 792–793, 277 S.E.2d at 625–26, and further elaborated on in *Cooper*, 172 W.Va. at 271–272, 304 S.E.2d at 856, where the codefendant who plea bargained received one year in the county jail, the same sentence obtained by the codefendant in this case:

"Disparate sentences for co-defendants are not per se unconstitutional. Courts consider many factors such as co-defendants' respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If defendants are similarly situated, some courts will reverse on dispari-

---

3. We have reviewed the statutory schemes of other jurisdictions to see what sentences they could impose on a defendant in Mr. Buck's position [i.e., a first conviction for "armed" or "aggravated" robbery involving the use of a "deadly" or "dangerous" weapon and serious bodily injury to an elderly victim]. In twenty-nine states, the maximum sentence would be substantially less than seventy-five years. *See* Alaska Stat. §§ 11.41.500, 12.55.125(c) (1980) (twenty years); Ariz.Rev.Stat.Ann. §§ 13–1904 (Supp.1983), 13–701 (1978), 13–604(G) (Supp. 1983) (twenty-one years); Cal.Pen.Code §§ 211a (West & Supp.1984), 213, 11701(e) (Supp.1984), 12022, 12022.7 (1982) (nine years); Colo.Rev. Stat. §§ 18–4–302 (1978), 18–4–304, 18–1–105(c) (Supp.1983) (sixteen years plus two years on parole); Conn.Gen.Stat.Ann. §§ 53a–35a, 53a–134 (West Supp.1982) (twenty years); Del.Code Ann. tit. 11, §§ 832, 4205 (1979) (thirty years); Hawaii Rev.Stat. §§ 708–840 (1976), 706–659 (Supp.1982) (twenty years); Ill.Ann.Stat. ch. 38, §§ 18–2 1005–5–3 (Smith-Hurd Supp.1982), 1005–8–1, 1005–8–2 (1982) (sixty years); Ind. Code §§ 35–42–5–1, 35–50–2–4 (1981) (thirty years with not more than twenty years added for aggravating circumstances); Iowa Code Ann. §§ 711.2, 902.9 (West 1979) (twenty-five years); Ky.Rev.Stat.Ann. §§ 532.060(2)(b), 515.-020 (1975) (ten to twenty years); Me.Rev.Stat. Ann. tit. 17–A, §§ 651, 1252 (1983) (twenty years); Md.Ann.Code art. 27 § 488 (1982) (twenty years); Minn.Stat.Ann. § 609.245 (West 1966) (twenty years); Mont.Code Ann. §§ 45–5–401, 46–18–221 (1983) (fifty years); Neb.Rev.Stat. §§ 28–324, 28–105, 28–1205 (1979) (seventy years); N.H.Rev.Stat.Ann. §§ 636:1(III), 651:2(II)(a), 651:6 (1974) (thirty years); N.J. Stat.Ann. §§ 2C:15–1(b), 2C:43–6(a)(1) (West 1982) (twenty years); N.M.Stat.Ann. §§ 30–16–2 (1978), 31–18–15, 31–18–15.1 (1981) (twelve years); N.Y.Penal Law §§ 160.15 (McKinney 1975), 70.00 (1975 & Supp.1983) (twenty-five years); N.D.Cent.Code §§ 12.1–22–01(2) (1976), 12.1–32–01 (Supp.1983) (twenty years); Ohio Rev.Code Ann. §§ 2911.01, 2911.11 (1982) (twenty-five years); 18 Pa.Cons.Stat.Ann. §§ 3701, 1103 (Purdon 1983) (twenty years); S.C.Code Ann. § 16–11–330(i) (1977) (twenty-five years); S.D.Codified Laws Ann. §§ 22–30–6, 22–30–7 (1979), 22–6–1 (Supp.1983) (twenty-five years); Vt.Stat.Ann. tit. 13, § 608(c) (1974) (twenty years); Wis.Stat.Ann. §§ 943.32 (West 1982), 939.50(3)(b) (1982 & Supp.1983) (twenty years); Wyo.Stat. § 6–2–401 (1983) (twenty-five years).

4. Virginia has a comparable open-ended punishment provision. *See* Va.Code § 18.2–58 (1950) (life or a term of years with no maximum).

5. The codefendant pleaded guilty to grand larceny. Under W.Va.Code, 61–3–13 (1977), a person guilty of that offense may be sentenced to either jail or the penitentiary. If confined in jail, the maximum sentence is one year.

ty of sentence alone." (Citations and footnotes omitted)

■ In comparing the defendant's prior record with that of his codefendant's, we find that both had been in trouble with the law as juveniles. According to Mr. Buck's presentencing report, he was charged with tampering with a motor vehicle in Clarksburg, West Virginia, in 1970, and was placed on probation in Kanawha County in 1975 for possession of marijuana. He also committed a breaking and entering and was sent to the Industrial School for Boys at Pruntytown, where he escaped twice and was then sent to the Anthony Correctional Center.

No presentencing report was prepared for Mr. Richards, but the record developed at the second sentencing hearing indicates that he had also been placed on probation for possession of marijuana. In addition, Mr. Richards had been involved in an auto theft.

As an adult, Mr. Buck had been arrested, but not convicted, for writing a worthless check (a misdemeanor), grand larceny, and possession of a controlled substance with intent to deliver. These latter two charges were allegedly committed shortly before the offense involved in the present case. Mr. Richards had also been arrested without conviction—once for petit larceny (dismissed because the complainant failed to appear), and once for auto theft (dismissed because the time period elapsed).

The trial court justified its decision to reaffirm the seventy-five year sentence upon several grounds: first, the defendant's juvenile record; second, the fact that the defendant had planned and instigated the robbery and struck the victim several times with a tire iron, from which the court concluded that he had intended to kill the victim, and third, the fact that he had received a negative presentence diagnostic evaluation from the Huttonsville Correctional Center. The court explained that the

disparity between the defendant's sentence and that of his codefendant was based upon its belief that Mr. Buck had threatened to kill his codefendant. This led the court to conclude that it would be unsafe to sentence both the codefendant and Mr. Buck to the penitentiary.

We do not believe that any of these reasons, either individually or taken in combination, can justify a seventy-five year sentence. The defendant's prior juvenile record, devoid of any conviction of a crime of violence, cannot be accorded substantial weight in the sentencing process.[6] Our juvenile law recognizes that youthful offenses may be a product of immaturity, home environment, or other causes beyond the juvenile's control. *See State ex rel. D.D.H. v. Dostert,* 165 W.Va. 448, 269 S.E.2d 401, 411 (1980). The objective fact remains, however, that none of the defendant's prior offenses involved any violence to the person and that this offense was his first adult conviction.

We do not doubt that the defendant instigated the robbery and struck the victim. We do not agree, however, that from this premise the circuit court could conclude that he intended to murder the victim. Certainly, the defendant's involvement in the crime would warrant a period of incarceration. The inquiry on remand was not whether the defendant should be incarcerated, but whether seventy-five years was disproportionate.

The presentence diagnostic report from Huttonsville mentioned by the trial court was not entirely negative. It did not reject the idea of probation entirely,[7] although it ultimately concluded that Mr. Buck was a poor risk for probation.

Finally, the disparity between the defendant's sentence and that of his codefendant cannot be justified on the basis of threats made by Mr. Buck against his codefendant. We find no fault with the lighter sentence imposed on the codefendant who had cooperated with the State and was only margin-

---

6. No issue was raised as to whether W.Va.Code, 49–5–17 (1978), limits such consideration.

7. "The Court may wish to place the subject on probation. If he is probated then he should become gainfully employed and not allowed to change or resign from that employment unless prior written approval has been granted by his probation officer." Recommendation Summary, Pre-Sentence Evaluation Report, May 2, 1979.

ally involved in the planning and commission of the offense. However, its reasonableness stands in stark contrast to the seventy-five years imposed upon Mr. Buck.

We, therefore, conclude that the defendant's sentence was disparate and violated our constitutional provision which requires penalties to be proportioned to the character and degree of the offense.

We decline the defendant's invitation to hold that we have the power under W.Va. Code, 58–5–25 (1966),[8] or by virtue of our inherent supervisory powers to set a reduced sentence for him.[9] Instead, we will once again remand this case for reconsideration of the sentence under the guidelines herein contained. We do, however, conclude that the involved circuit judge should not preside upon the resentencing, and we will, therefore, by an appropriate administrative order designate another circuit judge to handle the resentencing.[10]

For the foregoing reasons, the case will be remanded for further resentencing.

Remanded.

---

**8.** W.Va.Code, 58–5–25 (1966), provides in relevant part: "The Supreme Court of Appeals shall ... reverse the [judgment] in whole or in part, if erroneous, and enter such judgment, decree or order as the court whose error is sought to be corrected ought to have entered."

**9.** In *Yates v. United States*, 356 U.S. 363, 366–67, 78 S.Ct. 766, 768–69, 2 L.Ed.2d 837, 840 (1958), the Supreme Court had initially remanded a contempt case for reconsideration of the length of the sentence. On remand, the federal district court imposed the same sentence and the Supreme Court reduced the sentence stating:

"However, when in a situation like this the District Court appears not to have exercised its discretion in the light of the reversal of the judgment but, in effect, to have sought merely to justify the original sentence, this Court has no alternative except to exercise its supervisory power over the administration of justice in the lower federal courts by setting aside the sentence of the District Court.

"... [T]his Court is of the view, exercising the judgment that we are now called upon to exercise, that the time that petitioner has already served in jail is an adequate punishment for her offense."

**10.** Other courts have utilized another judge for resentencing where it appeared that the first sentencing judge exhibited some bias against the defendant, obtained prejudicial information at the sentencing hearing, or the transfer was deemed necessary to preserve the appearance of fairness and justice. *See Calvaresi v. United States*, 348 U.S. 961, 75 S.Ct. 522, 99 L.Ed. 749 (1955) (per curiam); *Blunt v. United States*, 244 F.2d 355, 368 (D.C.Cir.1957); *United States v. Garcia*, 694 F.2d 294, 296 (1st Cir.1982); *United States v. Robin*, 553 F.2d 8, 10 (2d Cir.1977); *United States v. Diamond*, 561 F.2d 557, 559 (4th Cir.1977) (per curiam); *United States v. Long*, 656 F.2d 1162, 1166 (5th Cir.1981); *Bercheny v. Johnson*, 633 F.2d 473, 476–77 (6th Cir.1980); *United States v. Wolfson*, 634 F.2d 1217, 1222 (9th Cir.1980); *State v. Valencia*, 124 Ariz. 139, 141, 602 P.2d 807, 809 (1979); *People v. Swanson*, 140 Cal.App.3d 571, 574, 189 Cal.Rptr. 547, 548 (1983); *State v. Vaitogi*, 59 Hawaii 592, 602, 585 P.2d 1259, 1265 (1978); *People v. Brooks*, 69 Ill.App.3d 18, 22, 25 Ill.Dec. 496, 498, 386 N.E.2d 1160, 1162 (1979); *People v. Jolly*, 51 Mich.App. 163, 175, 214 N.W.2d 849, 855 (1974). *See also People v. Cohen*, 640 P.2d 1138, 1139 (Colo.1982) (en banc) (per curiam) (court would have reassigned case if original judge had not resigned).