# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0247** (Upshur County 16-F-76)

**Codey Dale Foster,**
**Defendant Below, Petitioner**

**FILED**

**March 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Codey Dale Foster, by counsel G. Phillip Davis, appeals the Circuit Court of Upshur County's March 14, 2018, sentencing order following his convictions for daytime burglary, strangulation, and first-degree robbery. Respondent State of West Virginia, by counsel Scott E. Johnson, filed a response. On appeal, petitioner argues that the circuit court erred by ordering a harsher sentence for him than for his codefendant and in considering an improper factor at sentencing.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 13, 2016, the Upshur County Grand Jury returned a seven-count indictment against petitioner charging him with one count each of daytime burglary, first-degree robbery, petit larceny, assault of an elderly person during the commission of a felony, malicious assault of an elderly person, strangulation, and attempted murder. On this same date, and arising from the same offense, the grand jury returned a five-count indictment against Seth Logan Foster ("Mr. Foster") charging him with one count each of daytime burglary, first-degree robbery, petit larceny, assault of an elderly person during the commission of a felony, and malicious assault of an elderly person.

These indictments were returned following Simeon Layfield's report of a home invasion, wherein two men wearing masks had "jumped him" in his home when he came from his bedroom toward his kitchen to see why his dog was growling. Mr. Layfield was observed to have "significant injuries to his face[,]" and he informed officers that one suspect "should have an injury to his left eye where [Mr. Layfield] stuck his right finger in it."

Petitioner and Mr. Foster were detained shortly after the home invasion close to Mr. Layfield's home. Mr. Foster was patted down, and money was found in his left front pocket. The

1

investigating officer then advised Mr. Foster of his *Miranda*[1] rights and asked about the money and what had transpired at Mr. Layfield's. Mr. Foster admitted to taking the money from Mr. Layfield after entering his home. Mr. Foster explained that petitioner grabbed Mr. Layfield and struck him. As this occurred, Mr. Foster grabbed Mr. Layfield's wallet, which was on a dresser, and removed the money from it.

Petitioner was also advised of his *Miranda* rights and, although he "told several different stories," he admitted being present and that Mr. Layfield "had stuck his finger in his [l]eft eye." Petitioner also stated that during his tussle with Mr. Layfield, Mr. Layfield attempted to get petitioner in a "[r]ear naked choke," but was unsuccessful. Petitioner reported, however, that he was successful in getting Mr. Layfield into a chokehold.

Both petitioner and Mr. Foster entered into plea agreements with the State. Petitioner agreed to plead guilty to daytime burglary, first-degree robbery, and strangulation, in exchange for dismissal of the remaining charges. Mr. Foster agreed to plead guilty to fraudulent use of an access device, daytime burglary, and assault during the commission of a felony, a lesser-included offense of the charged assault of an elderly person during the commission of a felony.[2]

Presentence investigation reports ("PSI") were completed for both petitioner and Mr. Foster to aid the circuit court in sentencing. In Mr. Foster's report, Mr. Layfield provided that he still has "a lot of problems with [his] health" and "some permanent issues[,]" but that those issues "ha[ve] come from [petitioner's] actions." Mr. Layfield reported that he "could tell in [Mr. Foster's] heart he didn't want to participate in the violence. He wasn't kicking as hard as he could, like he was holding back almost. I think that is the most important thing." Mr. Layfield did not provide a victim impact statement for petitioner's PSI. Rather, the report states that "[t]his officer attempted to contact the [v]ictim on multiple occasions; however, no interview was conducted." In the PSI, the officer asserted that a statement would be provided at a later date.

In March of 2017, Mr. Foster was sentenced to one to ten years of incarceration for his daytime burglary conviction, not less than two nor more than ten years for his assault during the commission of a felony conviction, and one year for his fraudulent use of an access device conviction. The circuit court ordered that Mr. Foster's sentences for daytime burglary and assault during the commission of a felony run concurrently to one another while his sentence for fraudulent use of an access device conviction run consecutively to the other two; however, the court suspended execution of Mr. Foster's sentence for fraudulent use of an access device and placed him on probation for two years.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]Arising from a separate incident not involving petitioner, Mr. Foster was charged in a separate indictment with several other crimes, including fraudulent use of an access device. Mr. Foster's plea agreement also covered that separate indictment.

2

On July 7, 2017, petitioner was sentenced to not less than one nor more than fifteen years[3] of incarceration for his daytime burglary conviction, not less than one nor more than five years for his strangulation conviction, and a determinate forty years for his first-degree robbery conviction. The court ordered these sentences to run consecutively. On March 14, 2018, the court resentenced petitioner to allow him to pursue an appeal, and it is from this order that he appeals.

This Court reviews sentencing orders "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Adams*, 211 W. Va. 231, 565 S.E.2d 353 (2002). We have also held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). In sum, "[i]t is not the proper prerogative of this Court to substitute its judgment for that of the trial court on sentencing matters, so long as the appellant's sentence was within the statutory limits, was not based upon any impermissible factors, and did not violate constitutional principles." *State v. Georgius*, 225 W. Va. 716, 722, 696 S.E.2d 18, 24 (2010).

Petitioner first argues that the circuit court erred in imposing a harsher sentence for him than Mr. Foster. Petitioner claims that he and Mr. Foster were similarly situated because they both entered a plea agreement and accepted responsibility for their crimes. Petitioner argues that despite being similarly situated, his effective twelve- to sixty-year sentence was unconstitutionally disproportionate to his codefendant's effective two- to ten-year sentence.

We have previously held that

> [d]isparate sentences for codefendants are not per se unconstitutional. Courts consider many factors such as each codefendant's respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If codefendants are similarly situated, some courts will reverse on disparity of sentence alone.

Syl. Pt. 2, *State v. Buck*, 173 W. Va. 243, 314 S.E.2d 406 (1984).

Despite petitioner's conclusory assertion that he and his codefendant were similarly situated, we have not found that to be the case where codefendants entered guilty pleas to separate and distinct offenses. *State v. Watkins*, 214 W. Va. 477, 481, 590 S.E.2d 670, 674 (2003) ("We believe that the appellant's claim of disparate sentencing is untenable given the guilty pleas and subsequent convictions to two separate and distinct offenses by the appellant and the codefendant; it is clear that the appellant and the codefendant were not similarly situated[.]").

---

[3]Although it is unclear from the record, apparently petitioner and Mr. Foster received different sentences for this conviction because petitioner broke and entered Mr. Layfield's home. *Compare* W. Va. Code § 61-3-11(a) (1993), *with id.* § 61-3-11(b) (1993).

Here, petitioner and his codefendant were not only charged with several separate and distinct offenses[4], but also pled guilty to several separate and distinct offenses. While the two each pled guilty to daytime burglary, petitioner also pled guilty to first-degree robbery, for which he faced an open-ended sentence of "not less than ten years,"[5] and strangulation, which carried an indeterminate one- to five-year sentence.[6] Mr. Foster, conversely, was exposed to a maximum of ten years of incarceration for his fraudulent use of an access device conviction[7] and to two to ten years for his assault during the commission of a felony conviction.[8] Petitioner and Mr. Foster, therefore, were not similarly situated.

Moreover, disparate sentences for codefendants may be justified by reference to "each codefendant's respective involvement in the criminal transaction." *Buck*, 173 W. Va. at 244, 314 S.E.2d at 407, syl. pt. 2, in part. By the time petitioner appeared for sentencing, Mr. Layfield had submitted a victim impact statement, portions of which were read into the record. Mr. Layfield, who was sixty-five years old at the time petitioner robbed him, recounted that after walking toward his barking dog, he was hit by petitioner and "knocked . . . clear across the dining room." Mr. Layfield was "so disoriented from the first punch to the temple" that he "couldn't defend [himself], let alone fight back." Mr. Layfield continued:

> [petitioner] was immediately on top of me, and there was a constant pounding to my face. He was hitting me as hard as he could. I felt my nose break up in my face, and I reached up and pulled it out. After beating on me for a time, he first attempted to break my neck, then tried to strangle me. This separate incident, where he jerked my neck and I saw a bright light and there was a loud crack, I thought my neck was broke. You don't try to jerk someone's neck like that

---

[4]Notably, only petitioner was charged with attempted murder and strangulation.

[5]"Any person who commits . . . robbery by . . . [c]omitting violence to the person . . . is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years." W. Va. Code § 61-2-12.

[6]"Any person who strangles another without that person's consent and thereby causes the other person bodily injury or loss of consciousness is guilty of a felony and, upon conviction thereof, shall be . . . imprisoned . . . not less than one year or more than five years . . . ." W. Va. Code § 61-2-9d(b).

[7]"Any person who knowingly, willfully and with intent to defraud . . . uses . . . any . . . unauthorized access device shall be guilty of a felony, and, upon conviction thereof, shall be . . . imprisoned in the penitentiary for not more than ten years . . . ." W. Va. Code § 61-3C-13(c).

[8]"If any person in the commission of . . . a felony . . . unlawfully . . . wound[s] another person, he shall be guilty of a felony and, upon conviction, shall . . . be confined in the penitentiary not less than two nor more than ten years . . . ." W. Va. Code § 61-2-10. An appropriate sentence for this crime also includes confinement in jail for not more than a year and a fine. *Id.*

without trying to break it. When he started choking me, after he noticed it didn't break my neck, I said, "Man, you're killing me; you've got to let up." He then tightened even tighter. I realized then he was trying to kill me.

In stark contrast to this description of petitioner's involvement, Mr. Layfield reported that Mr. Foster "didn't want to participate in the violence" and was "holding back." Also, petitioner acknowledges that Mr. Foster "has a slightly less significant criminal record[.]" For these reasons, we find that the disparate sentences here are not unconstitutional.

Petitioner also claims that the circuit court considered an impermissible factor at sentencing in stating the following:

But I will tell you that part of sentencing, the part that often doesn't come into play, is punishment. And another part that often doesn't come into play is protecting the community and sending a message. I think sometimes it's appropriate for a court to sentence somebody, to send a message.

. . . .

People don't elect prosecuting attorneys and judges – they – they elect them because they – when they put them in that position, they think they're going to be safe, they think that these people are going to protect them. And – it doesn't often come down to that, with this [c]ourt protecting the community from somebody or – sending a strong message to the community shouldn't – it shouldn't be routine, that the [c]ourt sentences somebody based, all or in part, on those factors. But, in this case, I think it is. I think those factors have to come into play. This – again, this is the most serious robbery offense I've ever seen. I think the [c]ourt – I know the [c]ourt needs to send a message concerning home invasion burglaries. I think the [c]ourt needs to send a message about home invasion burglaries and robberies that are committed while on drugs, that they won't be tolerated, and they're not in any way going to be treated lightly by – by this [c]ourt.

Petitioner acknowledges that his sentences were within statutory limits, but he claims that the circuit court erroneously based its sentencing decision on the desire to make an example of him.

Petitioner fails to cite any law prohibiting a court from considering deterrence as a factor in imposing a sentence. In fact, we have previously recognized that incarceration serves a deterrent function. *See State ex rel. Williams v. Riffe*, 127 W. Va. 573, 577, 34 S.E.2d 21, 23 (1945) ("Law enforcement in the name of the State primarily is for the safety and well-being of the people as a whole *and the punishment of the individual offender is for the purpose of deter[r]ing others from committing like offenses.*") (emphasis added); *State v. McFarland*, 175 W. Va. 205, 216, 332 S.E.2d 217, 228 (1985) (finding no abuse of discretion in permitting voir dire regarding juror views "on the various theories underlying incarceration: punishment, rehabilitation and *deterrence*") (emphasis added). Additionally, in *McFarland v. Ballard*, we considered an appellant's challenge to his seventy-year sentence for first-degree robbery. No. 12-1105, 2013 WL 3184657 (W. Va. June 24, 2013)(memorandum decision). The petitioner there

claimed that the circuit court impermissibly considered his nonresident status in imposing the sentence. *Id.* at *3. We disagreed, finding that the circuit court "simply stated his hope for a deterrent effect to put others on notice of the consequences of violating the citizens of Ohio County's expectation of safety in their home." *Id.* Accordingly, petitioner has failed to demonstrate that the circuit court's stated intention to deter future violent robberies amounts to an abuse of discretion.

For the foregoing reasons, the circuit court's March 14, 2018, resentencing order is hereby affirmed.

Affirmed.

**ISSUED:** March 15, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

6