**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**William B. Murray,**
**Petitioner Below, Petitioner**

**v.) No. 23-206** (Harrison County CC-17-2019-C-55)

**Jonathan Frame, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner William B. Murray appeals the Circuit Court of Harrison County's March 10, 2023, order denying his second petition for a writ of habeas corpus.[1] On appeal, the petitioner argues that the habeas court erred in denying him habeas relief upon the basis of a favorable change in the law and ineffective assistance of counsel. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

In September 2012, the petitioner and his codefendant, Clayton Collins, were indicted on one count each of first-degree murder, conspiracy to commit murder, and concealment of a deceased human body. Prior to trial, Mr. Collins entered into discussions with the State about a plea agreement which set forth that he would testify at the petitioner's trial, and, in exchange, the State would permit him to plead guilty to second-degree murder and concealment of a deceased human body. Mr. Collins also agreed that a recidivist information would be brought against him.[2] At the conclusion of a jury trial held in 2013, the petitioner was convicted of one count of first-degree murder and one count of concealment of a deceased human body. The jury did not

---

[1] Petitioner appears by counsel Garrett M. Spiker, and respondent appears by Attorney General Patrick Morrisey and Deputy Attorney General Andrea Nease-Proper. Since the filing of this case, the petitioner has been transferred to Mt. Olive Correctional Center, and the superintendent is now Jonathan Frame. Accordingly, the Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

[2] At the time of the petitioner's trial, Mr. Collins had not yet officially entered into his plea agreement. Upon accepting his guilty plea, the circuit court sentenced Mr. Collins to an effective term of ten to forty years of incarceration.

recommend mercy on his first-degree murder conviction and, accordingly, the petitioner was sentenced to life incarceration without the possibility of parole.[3]

The petitioner filed a direct appeal with this Court in 2014, and we affirmed the petitioner's convictions in 2015. Later that same year, the petitioner filed a self-represented petition for a writ of habeas corpus, and, in 2016, the petitioner was appointed habeas counsel Sam Harrold, who filed an amended petition for a writ of habeas corpus (collectively, "first petition"). Through Mr. Harrold, the petitioner raised four grounds for relief: mental competency at the time of the crime; denial of counsel; ineffective assistance of counsel; and claim of incompetence at the time of the offense, as opposed to the time of trial. The court held an evidentiary hearing on December 5, 2016, during which it ensured that the petitioner knowingly and intelligently waived all other claims:

> I'm going to go over this with you. It says, in *Losh v. McKenzie* the Supreme Court of Appeals of West Virginia compiled the following comprehensive list of grounds which might be considered sufficient for habeas corpus relief. It says, counsel for the Petitioner after consulting with the Petitioner—and you're the Petitioner— should check each ground they consider inapplicable to the conviction challenged in the Petition. And whatever grounds you check would be deemed to be waived. All other grounds should be raised in the Petition or Amended Petition supported by the allegations of fact sufficient to state grounds for relief. So it says, Petition[er] should initial each ground waived in the space provided. Now I'm going to go over with you, just so there's no question, the grounds that you have initialed, which you and your counsel indicate you intend to waive. Because what we're trying to do is address everything in this omnibus proceeding that you wish to raise. If you waive any of these grounds then they can never be asserted at any later date in any state habeas corpus proceeding.

The petitioner affirmed that he understood. The court then went through the *Losh* list ground by ground and ensured that the petitioner intended to waive each of the grounds he had indicated were inapplicable to his case. The court reiterated, "you understand that you're not raising those in this habeas corpus proceeding, and by initialing those and not raising those at this time you would be forever barred from raising those in any state habeas corpus proceeding[?]" The petitioner responded, "Yes, Your Honor." Lastly, the court confirmed with the petitioner that he had signed a certificate that reads,

> my attorney has advised me that I should raise each and every ground which I feel may entitle me to habeas corpus relief. He has further advised me that any grounds not so raised are waived by me and may not ever be raised in State Court. I do not wish to raise any of the grounds initialed above, and knowingly waive them.

---

[3] The petitioner was also sentenced to a term of one to five years of imprisonment for his conviction of concealment of a deceased human body, which was ordered to run concurrently with his sentence for first-degree murder. The State dropped the conspiracy charge against the petitioner. For a full recitation of the factual and procedural history of petitioner's case, *see State v. Murray*, 235 W. Va. 312, 773 S.E.2d 656 (2015).

2

Thereafter, the petitioner presented the testimony of three witnesses: his two trial counsel and his grandfather. The court denied the petitioner habeas relief in an order dated July 20, 2017. While the petitioner filed a notice of appeal with this Court through newly appointed appellate counsel, Jason T. Gain, he subsequently withdrew his appeal in April of 2018.

Approximately one year later, the petitioner, self-represented, filed a second petition for a writ of habeas corpus. New counsel was appointed to represent the petitioner in the second habeas proceeding, and counsel filed an amended petition (collectively, "second petition") raising claims of ineffective assistance of habeas counsel (Mr. Harrold and Mr. Gain), change in law, non-disclosure of jury minutes, and the State's knowing use of perjured testimony.[4]

An omnibus hearing on the second petition was held on February 23, 2022, during which the petitioner presented only his own testimony. The petitioner claimed that Mr. Harrold never met with him prior to his first omnibus hearing and that rather than explain the *Losh* list to him or which grounds were being raised or waived, Mr. Harrold simply advised the petitioner to "initial here." The petitioner admitted that the first habeas court had gone over the *Losh* list with him and each of the claims waived but stated that because of Mr. Harrold's failure to adequately advise him of which rights he was waiving, he "locked up" and did not advise the court that he did not understand.

The petitioner claimed that had he been properly advised by Mr. Harrold, he would have challenged the State's knowing use of perjured testimony. According to the petitioner, Mr. Collins, his codefendant, initially told police that the petitioner was not involved in the murder or concealment of the body and only after having been offered a plea deal in exchange for his testimony at the petitioner's trial did Mr. Collins claim that the petitioner took part in the crimes. The petitioner claimed that Mr. Collins trial testimony regarding the petitioner's involvement was clearly false testimony in light of Mr. Collins' initial statement to police. The petitioner also testified that he would have challenged his sentences as being excessive and severer than expected because he received a much harsher sentence than Mr. Collins. However, on cross-examination, the petitioner admitted that his counsel was able to cross-examine Mr. Collins at trial and elicit testimony that he had initially made a statement indicating that petitioner had no involvement in the murder and concealment of the body. The petitioner also acknowledged that Mr. Collins had pled guilty to second-degree murder, a lesser-included offense, and that the State had asked the jury to recommend mercy.

By order dated March 10, 2023, the court denied the petitioner's second petition. The court found that Mr. Harrold was not ineffective in his assistance. While the petitioner argued that Mr. Harrold failed to present certain witnesses or ask certain questions during the petitioner's first omnibus hearing, the court found that during the hearing on the second petition, the petitioner failed to prove these claims because he failed to call the alleged witnesses or ask the questions Mr. Harrold allegedly failed to address. Moreover, the court found that while the petitioner complained

---

[4] The petitioner states that he abandoned his claims of non-disclosure of jury minutes and the State's knowing use of perjured testimony. The circuit court nevertheless addressed both claims in its order denying the petitioner habeas relief.

3

that Mr. Harrold did not adequately review the *Losh* list with him, the record demonstrated that the first habeas court had reviewed the list ground by ground, thoroughly explaining the rights raised and waived, and that the petitioner acknowledged that he understood. The court concluded that the petitioner had not presented any evidence to support a finding that a reasonable attorney would not have taken the same actions as Mr. Harrold and that, as such, the petitioner failed to demonstrate that "but for" the alleged errors, the result of the proceedings would have been different. Regarding the petitioner's claim that there had been a change in the law entitling him to habeas relief, the court found that the petitioner failed to present any evidence to prove this ground and that his "mere recitation of enumerated grounds without detailed factual support does not justify issuance of a writ of habeas corpus." The petitioner now appeals.

The petitioner raises two assignments of error. In his first, he claims the court erred in dismissing his change-of-law argument on the basis that he did not provide any evidentiary support at his omnibus hearing. The petitioner contends that he provided support for this claim in his second petition, in which he argued that *State v. Wilkerson*, No. 19-0471, 2020 WL 7231107 (W. Va. Dec. 7, 2020) (memorandum decision), held that disparate sentences between codefendants who are similarly situated can render a sentence unconstitutional. According to the petitioner, his argument contained in the second petition, along with his accompanying testimony regarding the sentences, was more than a "mere recitation of the grounds without factual support." The petitioner states that, moreover, he was unable to provide a legal analysis of his change-of-law argument through his testimony. Given the foregoing, the petitioner contends that he provided sufficient evidence for the court to have reached a decision on the merits.

We agree with the habeas court's conclusion that the petitioner is entitled to no relief on this issue, as *Wilkerson* does not establish a change in law entitling the petitioner to habeas relief.[5] At the outset, we note that *Wilkerson* is a memorandum decision. While memorandum decisions "may be cited as legal authority, and are legal precedent," Syllabus Point 5, in part, of *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014), this Court uses signed opinions containing original syllabus points to announce new law. *Id.* at 146, 764 S.E.2d at 306, Syl. Pt. 1. Accordingly, by its very nature, *Wilkerson* cannot set forth a new change in law.

However, even ignoring this fact, a review of *Wilkerson* shows that it is simply inapposite to the petitioner's claims. In *Wilkerson*, the petitioner and his codefendant, in equal measure, approached two child victims and repeatedly punched and kicked them and obtained a wallet and a cellphone. *Id.*, 2020 WL 7231107, at *1. On appeal, Mr. Wilkerson claimed that his sentence was illegally disproportionate to that of his codefendant's sentence. *Id.* While we explained that "[d]isparate sentences for codefendants are not per se unconstitutional," we noted that "[i]f codefendants are similarly situated, some courts will reverse on disparity of sentence alone." *Id.* at *2 (quoting Syl. Pt. 2, *State v. Buck*, 173 W. Va. 243, 314 S.E.2d 406 (1984)). In affirming Mr. Wilkerson's sentence, we determined that Mr. Wilkerson and his codefendant were not similarly

---

[5] We are free to affirm a lower court's order on different grounds. *See* Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965) ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.").

4

situated. *Id*. Although Mr. Wilkerson and his codefendant were equally culpable, we concentrated on the fact that Mr. Wilkerson's "convictions included two counts of robbery in the first degree, while his codefendant pled guilty to two counts of robbery in the second degree, a lesser offense." *Id*.

Accordingly, not only did we rely on prior case law—not a new change in the law—to reach our conclusion, but also, we determined that the facts of the case, which are strikingly similar to the case at bar, did not amount to disparate sentences. Like the codefendants in *Wilkerson*, both the petitioner and Mr. Collins were charged with the same crime—first-degree murder. And, like the codefendants in *Wilkerson*, the petitioner chose to proceed to trial while Mr. Collins chose to accept a plea deal. As a result, the petitioner was convicted of first-degree murder and Mr. Collins was convicted of second-degree murder, a lesser offense. Concentrating on those different convictions, we conclude that the petitioner and Mr. Collins, like the codefendants in *Wilkerson*, were not similarly situated. Given the foregoing, the petitioner has failed to establish a change in the law entitling him to relief.

In his second assignment of error, the petitioner contends that his habeas counsel, Mr. Harrold, provided ineffective assistance. According to the petitioner, Mr. Harrold failed to meet with him prior to the omnibus hearing, properly review the *Losh* list with him or explain what claims were being raised or waived, discuss the facts surrounding the trial or conviction, and discuss potential witnesses or strategy for the omnibus hearing. The petitioner claims that Mr. Harrold simply instructed him to initial the form which, coupled with the petitioner's difficulty reading, meant that the petitioner "unknowingly and unintelligently waived several grounds for habeas relief that he did not intend or wish to waive." Although he admits the first habeas court went through the *Losh* list with him, the petitioner states he simply did not understand the gravity of the situation or realize that he had not been adequately advised as to what rights he was waiving. The petitioner argues that had Mr. Harrold adequately advised him of his case, he would have raised other grounds which would have proved meritorious, such as sufficiency of the evidence, the State's use of perjured testimony, excessive sentence, severer sentence than expected, and nondisclosure of the grand jury minutes.

The petitioner further argues that Mr. Harrold was ineffective for failing to present certain witnesses or properly question the witnesses he did present at the omnibus hearing. Specifically, the petitioner claims that Mr. Harrold's questioning was ineffective and did not demonstrate how trial counsels' errors affected the outcome of the petitioner's trial. He also claims that Mr. Harrold did not prepare his grandfather to testify and failed to present witnesses who would have provided key testimony, such as Juley Herrick Murray. According to the petitioner, Ms. Herrick Murray had personal knowledge of a confession letter authored by Mr. Collins, and the petitioner claims that had Mr. Harrold called her to testify, the result of the omnibus hearing would have been different. The petitioner concludes that given the forgoing, Mr. Harrold's actions fell below the objective standard for a reasonable attorney and that, but for these errors, the outcome of his case would have been different.

Our review of the court's order denying habeas relief is for an abuse of discretion; however, we review underlying findings of fact under a clearly erroneous standard and question of law de novo. Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). To establish a claim

5

of ineffective assistance of counsel, the petitioner must prove: "(1) [c]ounsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. Pt. 5, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Our scrutiny of counsel's performance is "highly deferential." *Id.* at 16, 459 S.E.2d at 127 (quoting *Strickland*, 466 U.S. at 689-90). "When assessing whether counsel's performance was deficient, we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]'" *Miller*, 194 W. Va. at 15, 459 S.E.2d at 126 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). And "[f]ailure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim." *State ex rel. Vernatter v. Warden*, 207 W. Va. 11, 17, 528 S.E.2d 207, 213 (1999) (citing *State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 321, 465 S.E.2d 416, 423 (1995)).

Here, we find no abuse of discretion in the habeas court's finding that the petitioner failed to demonstrate that Mr. Harrold provided ineffective assistance. At the outset we note that the petitioner failed to present the testimony of Mr. Harrold as to his strategy or opinions on the grounds the petitioner now claims should have been raised and, as such, left the habeas court without the benefit of testimony from "the most significant witness, the trial attorney[.]" *See Frank A. v. Ames*, 246 W. Va. 145, 169, 866 S.E.2d 210, 234 (2021) (quoting *Tex S. v. Pszczolkowski*, 236 W. Va. 245, 253-54, 778 S.E.2d 694, 702-03 (2015)). Instead, we have only the petitioner's bald assertions, and we have explained that "'self-serving assertions without factual support in the record' have no force or effect." *See Pearson v. Pearson*, 200 W. Va. 139, 146, 488 S.E.2d 414, 421 (1997) (citing *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 61 n.14, 459 S.E.2d 329, 338 n.14 (1995)).

While the petitioner claims that Mr. Harrold failed to adequately advise him of the rights he was waiving at his first omnibus hearing, the record demonstrates that the first habeas court thoroughly advised the petitioner regarding the *Losh* list by going through the form ground by ground and confirming at numerous points that the petitioner understood and intended to waive such rights. The first habeas court likewise confirmed with the petitioner that he had signed a certificate that indicated his counsel had advised him as to the grounds to be raised or waived and that he knowingly waived the grounds as indicated on the *Losh* list. At no point did the petitioner indicate that he did not understand or needed additional time to confer with Mr. Harrold so that he could understand the rights he was waiving. Accordingly, the petitioner's bald assertions do not demonstrate that he was inadequately advised so much as they demonstrate regret regarding the claims he waived. Given our highly deferential review, we concur with the habeas court's findings that the petitioner was adequately advised as to his *Losh* list and the claims he waived and that he has failed to meet his burden of establishing that Mr. Harrold's performance was deficient under an objective standard of reasonableness, which is fatal to his claim. *See Daniel*, 195 W. Va. at 317, 465 S.E.2d at 419, Syl. Pt. 5, in part (providing that an ineffective assistance of counsel claim may be "dispose[d] of . . . based solely on a petitioner's failure to meet either prong of the test").[6]

---

[6] Because we concur with the habeas court's finding that the petitioner was adequately advised and knowingly waived his right listed on his *Losh* list, we need not address each ground for relief the petitioner contends Mr. Harrold should have raised. We briefly note, however, that

To the extent that the petitioner argues that Mr. Harrold was ineffective for failing to present the testimony of should-be witnesses or to ask certain questions of witnesses who were called to testify, we likewise find that he has failed to meet his burden of establishing this claim. For instance, the petitioner has identified only one witness that Mr. Harrold should have called, Ms. Herrick Murray. However, the petitioner failed to present her testimony at the second omnibus hearing and, thus, merely speculates as to what her testimony would have been during the first habeas proceedings. Such "guesswork and speculation are no substitute for evidence." *Coleman v. Painter*, 215 W. Va. 592, 597, 600 S.E.2d 304, 309 (2004). Moreover, while the petitioner claims that Mr. Harrold was ineffective in his questioning of witnesses because he "did not provide any evidence that 'but for' the errors" the result of the proceedings would have been different and "did not focus his questioning on the ineffective nature of the failure [of trial counsels] to cross examine the State's witnesses," this argument, too, is speculative. Aside from the petitioner's conclusory statements, he fails to offer a clear explanation of how the result of the prior proceeding could have been different if, for instance, Mr. Harrold had asked additional questions. Indeed, the petitioner does not even offer what specific questions Mr. Harrold should have asked or what information would have been elicited had he asked those questions. At most, the petitioner claims Mr. Harrold should have questioned trial counsel more to elicit evidence of trial counsel's failure to adequately question Mr. Collins, which the petitioner claims would have shown his innocence. As previously noted, however, we have already addressed the petitioner's claims regarding the sufficiency of the evidence to convict on direct appeal, and the petitioner cannot attempt to relitigate this issue through the guise of habeas corpus. In short, the petitioner has failed to establish that Mr. Harrold's actions fell below an objective standard of reasonableness or a reasonable probability that but for counsel's errors, the result of the proceedings would have been different.

In summary, upon considering the petitioner's bald assertions and his failure to produce any additional evidence (particularly the testimony of Mr. Harrold explaining what he did and did not do, and why) we agree with the instant habeas court that the petitioner has failed to sustain his burden of establishing either prong of the *Strickland/Miller* test. *See Miller*, 194 W. Va. at 6, 459 S.E.2d at 117, Syl. Pt.5, in part.

---

these claims hold no merit. For example, the petitioner argues that Mr. Harrold should have challenged the sufficiency of the evidence to convict him. However, this issue was raised in the petitioner's direct appeal and, therefore, is barred from further review. *See Medley v. Ames*, No. 21-0113, 2022 WL 856611 (W. Va. Mar. 23, 2022) (memorandum decision) (concluding that the law of the case doctrine prohibited the habeas petitioner from relitigating claims raised on direct appeal). As another example, the petitioner claims that Mr. Harrold should have challenged the petitioner's life sentences as excessive. But, the petitioner was sentenced in accordance with West Virginia Code § 61-2-2, and as we have often repeated, "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." *See* Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982). Impermissible factors include "race, sex, national origin, creed, religion, and socioeconomic status . . . ." *State v. Moles*, No. 18-0903, 2019 WL 5092415, at *2 (W. Va. Oct. 11, 2019) (memorandum decision) (citation omitted). Accordingly, because the petitioner's sentence follows statutory guidelines and because he does not claim an impermissible factor was considered by the circuit court, this claim holds no merit.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 10, 2025

**CONCURRED IN BY:**

Chief Justice William R. Wooten
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV